IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**RODOLFO MARTINEZ,**

            **Plaintiff,**

      v.                           CASE NO. 14-3040-SAC

**KRISTINE A. AULEPP,**
Doctor, USP-Leavenworth,

            **Defendant.**

### MEMORANDUM AND ORDER

This pro se civil action was filed by a federal prisoner housed at the United States Penitentiary, Leavenworth, Kansas (USPL). Having examined the materials filed, the court assesses an initial partial filing fee, which plaintiff is required to submit. In addition, the court finds that the complaint is deficient in several ways and requires plaintiff to cure these deficiencies.

### ASSESSMENT OF INITIAL PARTIAL FILING FEE

The fees for filing a civil complaint in federal court for one that is granted leave to proceed in forma pauperis is $350.00. Plaintiff has submitted a motion to proceed without Prepayment of Fees and has attached an Inmate Account Statement in support as statutorily mandated. Under 28 U.S.C. § 1915(b)(1), a prisoner granted such leave is not relieved of the obligation to pay the full

1

fee for filing a civil action.  Instead, it merely entitles him to proceed without prepayment of the full fee, and to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as funds become available.[1]

Furthermore, § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of the civil action.  Having examined the records of plaintiff's account, the court finds that the average monthly deposit during the relevant time period was $212.40, and the average monthly balance was $ 22.96.  The court therefore assesses an initial partial filing fee of $ 42.00, twenty percent of the average monthly deposit rounded to the lower half dollar.  Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court.  His failure to submit the initial fee within the prescribed time may result in dismissal of this action without further notice.

**ALLEGATIONS AND CLAIMS**

---

1   Pursuant to § 1915(b)(2), the Finance Office of the facility where Mr. Martinez is currently confined will be authorized to collect twenty percent (20%) of the prior month's income each time the amount in his institution account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

As factual support for his complaint, Mr. Martinez alleges as follows. In October 2012, he was transferred to the USPL from "FCI Bastrop" by way of Oklahoma. He has three distinct medical conditions: a prominent cyst on the back of his neck that has caused pain and he believes other symptoms; a cyst in a sinus cavity that was diagnosed at FCI Bastrop; and symptoms including periodic shortness of breath, chest pains, and numbness, which have gone undiagnosed. "FCI Bastrop" recommended removal of the cyst on his neck and approved a "cardiology procedure." Plaintiff complained 15 separate times between January 20, 2011, and April 19, 2013, of symptoms from the cyst on his neck "located on top of the nerves" including pain, a burning sensation, and that it was getting larger. Doc. 1-1 at pg. 34 (Central Office Administrative Remedy Appeal). He believed that this cyst could be the cause of other symptoms of which he complained including, for example, numbness in his extremities, shooting pains, and sleep interruption, and that it could be cancerous or result in permanent impairment.

Plaintiff has attached many exhibits to his complaint including medical records and portions of the administrative remedies record. While the submission of exhibits with the complaint is discouraged, once they are submitted the court may consider them as part of the complaint. One exhibit is the Warden's Response to plaintiff's

Administrative Remedy dated January 21, 2013.  The Response, dated February 21, 2013, provided in pertinent part:

> You had an MRI of your sinuses completed at a previous institution which revealed a small cyst that does not require surgical intervention currently.  On October 18, 2012, you were seen by the Clinical Director for chronic care.  At that time she addressed your cardiac issues, reviewed your file, and ordered lab work and an EKG.  The EKG and lab work were normal.  Additionally, the cyst on the back of your neck was examined and determined that this would be an elective procedure and surgical intervention would not be considered at this time.  The Clinical Director instructed you to follow up as needed through sick call for continued or new issues that may arise.

Plaintiff also exhibits the Response by Regional Director Paul M. Laird to his Regional Administrative Remedy Appeal dated April 8, 2013, which provided in pertinent part:

> For relief you request a Cardiology consultation and outside consultation for the removal of a neck cyst and nasal cavity cyst. . . . On October 18, 2013, you were examined by the Clinical Director during a scheduled Chronic Care Clinic (CCC) Evaluation.  The Clinical Director made no recommendation for you to be evaluated by a Cardiologist.  Additionally, it was determined that the removal of your neck cyst was considered elective and that it would not be removed at the current time.  During your CCC evaluation, you voiced no concern regarding a nasal cavity cyst, nor have you reported to sick-call for evaluation of a nasal cavity cyst.  Based on this review, we concur with the manner in which the Warden addressed your concerns.  You have consistently been provided timely and appropriate medical care in accordance with Program Statement 6031.03, Patient Care.  The Health Services Department will continue to monitor your medical needs.  If your condition worsens, you may sign up for sick call and be re-evaluated.  Given this, we shall defer diagnostic and treatment interventions to the Health Services Staff at the local level. . . .

4

Doc. 1-1 at pg. 33. Plaintiff appealed this decision and received notice of a new Response due date of July 19, 2013, because more time was needed to respond to his Central Office Appeal. However, he received no response prior to filing this lawsuit.

Plaintiff claims that his constitutional right to medical treatment is being denied, and asserts that the Fifth, Eighth, and Fourteenth Amendments have been violated. The sole named defendant is Dr. Kristine A. Aulepp, whom plaintiff sues in her individual capacity. He requests relief in the form of transfer to "Care Level 3 institution in Texas" and punitive damages in the amount of $200,000.[2]

**SCREENING**

Because Mr. Martinez is a prisoner suing government officials, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94

---

2   Plaintiff's requests that no retaliation be taken against him and for "any additional relief" the court deems just are bald statements that are not considered further.

5

(2007). Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Having examined all materials filed by plaintiff under the relevant legal standards, the court finds that this action is subject to being dismissed for failure to state a federal constitutional claim.

## NO CLAIM UNDER 42 U.S.C. § 1983

Mr. Martin brings this action as a complaint pursuant to 42 U.S.C. § 1983. However, in order to state a claim under § 1983, a plaintiff must not only allege the violation of a right secured by the Constitution or laws of the United States, but must also show that the alleged deprivation was committed "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The named defendant is a doctor in a federal

6

penitentiary and plaintiff is a federal prisoner.  There is no showing that Dr. Aulepp acted as a state official or at any time acted "under color of state law."  Instead, it appears that Dr. Aulepp acted as a federal official.  Accordingly, the court finds that plaintiff fails to state a claim under § 1983.

The court also notes that plaintiff has submitted his complaint upon forms as required by local court rule, but has not properly utilized the forms to present the facts supporting each of his claims.  Instead, he simply marks the form "see attached" and refers to six attached pages that contain factual allegations run together with legal arguments and statements regarding administrative remedies.  If plaintiff decides to file an Amended Complaint, he must state the facts in support of all three of his claims upon the forms in the spaces provided and discuss administrative remedies in the appropriate space.  Furthermore, legal arguments generally have no place in a pro se complaint.  Therefore, plaintiff must omit any legal arguments from his Amended Complaint.  Legal arguments, if presented at all, must be set forth in a separate pleading entitled "Legal Memorandum" or "Memorandum in Support."

## **FAILURE TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

This court has jurisdiction under 28 U.S.C. § 1331 to hear an Eighth Amendment claim of denial of necessary medical treatment.

However, the facts alleged by Mr. Martinez to support his claim of denial of treatment fall short of stating a claim of constitutional magnitude. The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has two components: an objective component requiring that the pain or injury be "sufficiently serious"; and a "subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). To satisfy the objective component, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.

8

2000)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he (or she) must also draw the inference." *Id*. at 1305 (*citing Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Likewise, a mere difference of opinion between the inmate and prison medical personnel over the adequacy of medical treatment does not provide the basis for an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106-07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992)(Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.); *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses,

9

and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints."). As the United States Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-106. The prisoner's right is to medical care – not to the type or scope of medical care he personally desires.

In the instant action, plaintiff's allegations and exhibits plainly show that he has been furnished medical care by defendant for the conditions of which he complains.[3] His symptoms have been addressed by numerous health care personnel, he is in the chronic care program, and he has had lab work and other medical tests done including an EKG that was "unremarkable" and "an MRI of the neck and brain which were unremarkable." When plaintiff thought the lump on his neck was MRSA, it was examined and found not to look like MRSA. The lump has also been referred to as a swelling, mass, skin problem,

---

3   Plaintiff may not sue Dr. Aulepp for actions taken by someone other than her, and certainly not for the actions or inaction of medical staff at another prison.

chronic folliculitis, cyst, cystic lesion, abscess, boil not ready to be drained or that drains occasionally. When Dr. Aulepp first examined plaintiff in October 2012, she diagnosed it as a cyst that was not inflamed and not draining. She advised plaintiff that surgery to remove this cyst was "medically elective" and would not be considered at the time. (Doc. 1-1 at pg. 13).

In addition, plaintiff's own allegations and exhibits show nothing more than a difference of opinion between the lay wishes of the patient and the professional diagnosis and treatment provided by defendant Dr. Aulepp. A difference of opinion between a physician and a patient does not amount to a constitutional violation or sustain a claim under § 1983. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968). The court notes that Mr. Martinez does not even directly allege in his complaint that he was previously diagnosed with a serious medical condition involving the lump on his neck that required immediate surgery. Instead, he alleges only that he wrote a senator telling him "that the Medical staff at FCI Bastrup approved the surgery" and that Dr. Aulepp denied the surgery as well as his transfer to a Care Level 3 institution in Texas where he could have this surgery before his condition becomes life threatening. Plaintiff does not allege who diagnosed him as in need of surgery on his neck, what serious medical condition was diagnosed, or when

11

this diagnosis was made.4  On the other hand, plaintiff provides a grievance addressed to "H.S.A." dated March 7, 2011, which appears to be during his confinement at Balstrop, in which he complained of being told at sick call that the lump could be taken care of after his release.  The administrative response was that the procedure was cosmetic and agreement that the lump could be removed after he leaves the BOP.  (Doc. 1-1 at pg. 16).

Furthermore, to the extent that plaintiff's exhibits reflect that there is no need for surgery on his neck at this time and he may return to sick call should the condition worsen, he alleges at most a delay in treatment.  In situations where treatment has been delayed rather than denied altogether, the Tenth Circuit Court of Appeals requires that the inmate suffered "substantial harm" as a result of the delay.  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993).  Plaintiff alleges no facts showing that delay of surgery on his cyst has caused him substantial harm.  His belief that other symptoms are caused by the cyst on his neck is not supported in the medical records he provides, and he alleges no facts indicating that his neck condition has ever been diagnosed as causing his other symptoms.

---

4    Plaintiff has attached an exhibit entitled "Request for Administration of Anesthesia and for Performance of Operations and Other Procedures" (Doc. 1-1 at 18) dated November 9, 2012, in which he was advised of the nature and purpose of a procedure for incision and drainage of an abscess by David Campbell.  However, plaintiff does not refer to this exhibit in his complaint and does not explain that it has significance other than as his request for this procedure.

Finally, plaintiff's allegation that Dr. Aulepp has improperly diagnosed his neck condition as not requiring surgery at this time is at most a claim of negligence. As noted, negligence does not amount to a federal constitutional violation.[5]

**OTHER CLAIMS**

Plaintiff also fails to allege facts indicating that he has been denied necessary treatment for any of his other alleged symptoms or conditions. His exhibits show that he has been examined and tested for his other symptoms and is being treated for hypertension and skin conditions. He was informed that removal of his nasal cyst was not required at this time, and it appears that he has not exhausted administrative remedies regarding his nasal cyst.

Plaintiff alleges no facts whatsoever to support his claims that either the Fifth or Fourteenth Amendments have been violated by defendant.

**MOTION TO APPOINT COUNSEL**

Plaintiff has filed a Motion to Appoint Counsel (Doc. 3), which the court has considered. There is no right to appointment of counsel in a civil action, and plaintiff appears capable of

---

5   A claim that a federal official has acted negligently must be presented under the Federal Tort Claims Act, which has its own strict exhaustion prerequisites.

presenting the facts in support of his claims. Accordingly, the court denies this motion, without prejudice.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 42.00. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff is required to show cause why this action should not be dismissed for failure to state a federal constitutional claim.[6]

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (Doc. 3) is denied.

The clerk is directed to send 1331 forms to plaintiff.

**IT IS SO ORDERED.**

Dated this 14th day of March, 2014, at Topeka, Kansas.

---

6   If plaintiff decides to file an Amended Complaint, he must write "Amended Complaint" at the top of the first page of the pleading together with the number of this case, 14-3040. Any new complaint must be filed upon court-approved forms, and the forms must be properly completed and utilized. Plaintiff is reminded that an Amended Complaint completely supersedes the original complaint, which means that he may not simply refer to the original complaint and instead must include all allegations and claims that he intends to present in the Amended Complaint. Any allegations and claims not included in the Amended Complaint will not be considered further.

**s/Sam A. Crow**
**U. S. Senior District Judge**