IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| RODOLFO MARTINEZ,              )<br>                                                  )<br>            Plaintiff,              )<br>                                                  )<br>v.                                             )<br>                                                  )<br>KRISTINE A. AULEPP and      )<br>DAVID CAMPBELL,               )<br>                                                  )<br>            Defendants.              )<br>_____)  | Case No. 14-3040-CM |

## MEMORANDUM AND ORDER

Pro se plaintiff Rodolfo Martinez brings this case, claiming that defendants Dr. Kristine A. Aulepp and David Campbell violated his constitutional right to be free from cruel and unusual punishment. Specifically, plaintiff claims that defendants failed to treat and surgically remove a lipoma on the back of his neck. Plaintiff believes that the failure to remove the lipoma has led to other painful health conditions. He also seeks damages for failure to treat a sinus cyst and chest pains.

The case is before the court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 21) and plaintiff's Motion for Reconsideration for Appointment of Counsel Pursuant to 28 U.S.C. § 1915(e)(1) (Doc. 23).

### Motion for Reconsideration of Appointment of Counsel

Plaintiff's motion is titled a "Motion for Reconsideration," but the last time the court denied appointment of counsel in this case was March 18, 2015. A motion to reconsider a non-dispositive order (which includes an order denying appointment of counsel) must be filed within fourteen days of the date the order is filed, absent court extension. D. Kan. R. 7.3(b). Plaintiff failed to file his motion within that time period. The court denies the motion on that basis.

Even if the court were to consider the motion as a new motion for appointment of counsel, relief is still unwarranted. In civil cases, generally plaintiffs have no constitutional right to the appointment of counsel. *Cox v. LNU*, 924 F. Supp. 2d 1269, 1279 (D. Kan. 2013). The court may, however, in its discretion "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 749 (10th Cir. 2009) (observing that the appointment of counsel lies within the broad discretion of the court). But § 1915(e)(1) does not offer a statutory right to counsel. *See Cox*, 924 F. Supp. 2d at 1280 (citations omitted).

The court considers several factors when deciding whether to appoint counsel: (1) the merits of the litigant's claims; (2) the nature of the factual issues raised; (3) the litigant's ability to present his claims; and (4) the complexity of the legal issues involved. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991) (providing factors). The court discusses the merits of plaintiff's claims in more detail below. Even on cursory review, they are questionable. The factual and legal issues are not particularly complex, and plaintiff is able to adequately communicate with the court. After consideration of the relevant factors, the court denies plaintiff's renewed motion to appoint counsel.

## Motion to Dismiss or for Summary Judgment

### I.     Factual Background

Plaintiff is a federal prisoner serving time in Leavenworth, Kansas ("USP Leavenworth"). Plaintiff was transferred to USP Leavenworth in October 2012 from the Federal Correctional Institution in Bastrop, Texas ("FCI Bastrop").

The Bureau of Prisons ("BOP") has a four-part administrative remedy program to address inmate complaints about confinement. This administrative remedy program requires inmates to seek and receive a final response at three levels of review before seeking judicial relief. In this case,

plaintiff has exhausted his administrative remedies with respect to his claims that accrued through September 2014.

The BOP provides inmate health care through use of health care professionals. Agency staff members see inmates during scheduled appointments or sick call procedures. Inmates with chronic conditions may be assigned to Chronic Care Clinics ("CCC") for regular health care at appropriate intervals.

BOP health care professionals have evaluated plaintiff and his health conditions on a number of occasions. The providers have advised plaintiff to seek further assessments if his condition changes or worsens. But plaintiff frequently has disagreed with the clinical evaluations.

In January and February 2011, plaintiff first complained to staff at FCI Bastrop of a skin condition on his neck/head. Plaintiff was examined and advised that an assigned provider would follow up with him. On March 3, 2011, a treating Mid-Level Practitioner ("MLP") examined plaintiff and noted a three-fourths-by-one-half-inch egg-shaped area swelling on the back of plaintiff's head (a cyst). Plaintiff was advised to use over-the-counter medications and a heat pack, and to consider surgical options after being released from custody. Plaintiff insisted that the MLP remove the cyst. The Health Service Department advised him that the procedure was cosmetic and could be done when he left BOP custody.

Ultimately, plaintiff got a Magnetic Resonance Imaging ("MRI") of his brain and neck, but it was normal. Despite the normal MRI, medical staff at FCI Bastrop eventually referred plaintiff for a surgical consultation.

On October 18, 2012, defendant Aulepp first examined plaintiff at CCC for a number of complaints, including hypertension, hyperlipidemia, and the cyst. She noted that the cyst was approximately three to four centimeters and was not inflamed or draining. Defendant Aulepp told

-3-

plaintiff that removal was elective and would not be considered. She discontinued plaintiff's surgical consult.

Defendant Aulepp diagnosed plaintiff's cyst as a lipoma, or a harmless fatty tumor under the skin. Under BOP policy, removal of lipomas is "Medically Acceptable – Not Always Necessary." Treatment for lipomas depends on the risks and benefits of the treatment, available resources, history of the condition, and effect of intervention on inmate functioning in his Activities of Daily Living. The Clinical Director and staff continue to evaluate plaintiff's lipoma. The lipoma is in an area that could cause nerve damage and post-operative complications. And symptoms plaintiff reports (including numbness and dizziness) are not clinically-related to the lipoma. Clinical staff members, however, continue to evaluate these symptoms and provide testing. Thus far, staff has provided laboratory work and diagnostic tests, including electrocardiograms ("EKGs") for plaintiff's complaints of chest pains. Staff referred plaintiff for a cardiac consultation when an EKG showed inverted T-waves. The cardiologist recommended a stress echocardiogram, which returned normal results.

Defendant Campbell is employed by the United States Public Health Service. He works with the BOP at USP Leavenworth, but was employed with Public Health Service during all times referenced in the complaint.

## II.     *Legal Standards*

Defendants move for dismissal or summary judgment in the alternative. The court considers evidence outside of plaintiff's complaint (including the *Martinez* report), and therefore will treat defendants' motion as one for summary judgment. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (stating a district court may sometimes consider a *Martinez* report in deciding a 12(b)(6) motion but only "[w]hen the plaintiff challenges a prison's policies or established procedures and the *Martinez*

report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond"; otherwise the court must treat the motion as one for summary judgment).

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Where, as here, the plaintiff proceeds pro se, the court construes the pro se filings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). On the other hand, a plaintiff's pro se status does not relieve him from complying with this court's procedural requirements. *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants).

## III. Discussion

### A. Exhaustion

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), requires that inmates exhaust available administrative remedies before filing a lawsuit about prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Here, plaintiff has exhausted his available administrative remedies for claims incurred during and before September 2014. He has not, however, exhausted his remedies with respect to claims accruing after that time. To the extent that plaintiff brings claims for complaints arising after September 2014, those claims are barred for failure to exhaust.

B.      *Bivens* Claims Against Individuals in Official Capacities

Plaintiff does not specify whether he brings his claims against defendants in their individual or official capacities. To the extent that plaintiff has attempted to sue defendants in their official capacities, such suit is improper and barred by sovereign immunity.

Plaintiff brings his claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, which provides a cause of action in some cases of constitutional violations by federal agents and employees. 403 U.S. 388, 397 (1971). But "when an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (citation omitted). "There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).

When actions charge federal officials for wrongdoing while acting in their official capacity, the charges operate as claims against the United States and not the individual defendants. *See, e.g.*, *id.* (barring a prisoner's action against the warden and prison psychologist who were acting in their official capacities). The United States is immune to suit unless sovereign immunity has been waived. *Atkinson v. O'Neill*, 867 F.2d 589, 590. The United States has not waived its sovereign immunity for constitutional torts. *See Bivens*, 403 U.S. at 410. The doctrine of sovereign immunity therefore bars plaintiff's claims against the United States.

C.      Absolute Immunity—Defendant Campbell

Defendant Campbell is an employee of the Public Health Service who committed all relevant acts while acting in the scope of his employment. This uncontroverted fact precludes any recovery against him. 42 U.S.C. § 233(a) provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

Under this statute, employees of the Public Health Service have absolute immunity for actions "arising out of the performance of medical or related functions within the scope of their employment . . . ." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). Defendant Campbell therefore is entitled to absolute immunity for his actions related to plaintiff's medical care.

    D.    <u>Qualified Immunity—Defendant Aulepp</u>

Qualified immunity protects government officials from individual liability under *Bivens* unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting that qualified immunity analysis is identical under 42 U.S.C. § 1983 and *Bivens*). When a defendant raises qualified immunity, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue. *Schroeder*, 311 F. Supp. 2d at 1250.

The court may consider either prong of the qualified immunity test first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the court will first determine whether defendant Aulepp was deliberately indifferent to plaintiff's medical needs. *Martin*, 909 F.2d at 406 ("Plaintiff has thus identified a clearly established constitutional standard by which her inadequate medical attention claim must be judged in the familiar 'deliberate indifference to serious medical needs' test . . . .") (quoting *Garcia v. Salt Lake Cnty.*, 768

F.2d 303, 307 (10th Cir. 1985)); *Armstrong v. Shawnee Cnty. Jail*, No. 08-03185-SAC, 2008 WL 4001456, at *1 (D. Kan. Aug. 26, 2008) (stating that a prison official's deliberate indifference to a serious medical need violates a prisoner's or pretrial detainee's constitutional rights) (citation omitted).

Deliberate indifference to a prisoner's serious medical needs contains both a subjective and an objective component. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). For the objective component, this court requires that the medical need be sufficiently serious, which is a category that has been defined to include a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotations omitted).

As for the subjective component, a plaintiff "must establish that defendant(s) knew he [or she] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Rauh v. Ward*, 112 F. App'x 692, 694 (10th Cir. 2004) (citing *Hunt*, 199 F.3d at 1224). Plaintiffs need not show that a prison official acted or failed to act believing that harm actually would occur to an inmate; rather, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Moreover, whether a prison official had the requisite knowledge of a substantial risk is a question of fact, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id*.

Plaintiff cannot meet the objective component of deliberate indifference. He has alleged no more than a disagreement with defendant Aulepps's treatment of him. He has not provided evidence that a physician has determined that his lipoma mandates treatment or surgical removal. To the contrary, BOP policy indicates that surgical procedures are elective in this instance. "A prisoner's

-8-

right is to medical care—not to the type or scope of medical care he personally desires." *Dalton v. Aulepp*, Case No. 13-3089-SAC, 2015 WL 728490, at *9 (D. Kan. Feb. 19, 2015).

Plaintiff's medical records show that he was a frequent user of medical services—whether from defendant Aulepp or other medical providers. In fact, many of the times plaintiff was denied surgical removal of the lipoma, the medical provider was not defendant Aulepp. Defendant Campbell also repeatedly told plaintiff that removal was not warranted, as did other providers. There exists no objective evidence supporting plaintiff's assessment of his medical condition and needs.

Plaintiff also cannot meet the subjective component. There is no evidence suggesting that defendant Aulepp knew that plaintiff faced a substantial risk of harm and disregarded that risk. Instead, the uncontroverted evidence shows that defendant Aulepp evaluated plaintiff and treated his conditions. She did not refer plaintiff for a surgical consultation as he believed was necessary, but she also did not intentionally refuse to treat him or ignore his medical complaints. Each time she saw plaintiff, she evaluated his medication and renewed his orders as needed. She also ordered laboratory testing and other medical tests. There is no evidence in the record reasonably suggesting that defendant Aulepp acted with subjective deliberate indifference.

Defendant fails to show a deprivation of a constitutional right. Qualified immunity therefore protects defendant Aulepp from the § 1983 claim.

### E. Injunctive Relief

Plaintiff initially sought injunctive relief of a transfer to another facility. He has since indicated that he is no longer seeking a transfer. In any event, plaintiff would not be entitled to injunctive relief because it is only available to remedy a violation of a federal right. 18 U.S.C. § 3626(a)(1)(A) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than

necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.") Plaintiff has failed to show the violation of a constitutional right, making injunctive relief unwarranted.

    **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 21) is granted.

    **IT IS FURTHER ORDERED** that plaintiff's Motion for Reconsideration for Appointment of Counsel Pursuant to 28 U.S.C. § 1915(e)(1) (Doc. 23) is denied.

    The case is closed.

    Dated this 13th day of January, 2016, at Kansas City, Kansas.

                                            **s/ Carlos Murguia**
                                            **CARLOS MURGUIA**
                                            **United States District Judge**